## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA *EX REL.* A-GAS AMERICAS AND KENNETH PONDER, <br><br>     Plaintiff, <br><br>     v. <br><br> LM SUPPLY, INC.; BMP USA, INC.; COOL MASTER U.S.A., LLC; IGAS USA, INC.; XIANBIN "BEN" MENG; AND T.T. INTERNATIONAL CO., LTD., <br><br>     Defendants. | Civil Action No. 17-cv-1500 (TFH) <br><br> COMPLAINT: FILED UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) |

## AMENDED COMPLAINT

The United States of America *ex rel.* A-Gas Americas and Kenneth Ponder ("Relators"), complaining of LM Supply, Inc.; BMP USA, Inc.; Cool Master U.S.A., LLC; IGas USA, Inc.; Xianbin "Ben" Meng; and T.T. International Co., Ltd., alleges and says as follows:

## PRELIMINARY STATEMENT

Pursuant to 31 U.S.C. § 3730(b)(1), *qui tam* relators A-Gas Americas and Kenneth Ponder, on behalf of and in the name of the United States of America and United States Customs and Border Protection within the federal Department of Homeland Security, seek to recover millions of dollars in customs duties fraudulently avoided by defendants, as well as treble damages and civil penalties, pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733. Alternatively, this action seeks to recover damages under the common law theory of unjust enrichment. This action also alleges violations of the Clean Air Act stemming from and related to the same conduct.

This complaint is based on defendants' knowing and fraudulent evasion of antidumping duties and customs fees on imports of hydrofluorocarbon ("HFC") chemicals from the People's Republic of China between 2016 and 2018.  As part of their scheme to defraud the United States of antidumping duties and other fees, defendants falsely described the nature of their merchandise, falsely declared their merchandise as not subject to antidumping duties and undervalued the merchandise on customs forms.  As a result of these actions, defendants avoided millions of dollars in duties and fees owed to the United States.

Relators filed an original complaint *in camera* on July 26, 2017, which was placed under and remains under seal pursuant to 31 U.S.C. § 3730(b)(2).  This amended complaint clarifies and amplifies the conduct, transactions, and occurrences alleged in the original complaint and alleges continuing fraudulent conduct, transactions, and occurrences after the date of the original complaint.

## PARTIES

1.      This action is brought on behalf of the United States of America.  The United States Department of Commerce ("Commerce") is the agency responsible for imposing anti-dumping duties on products it determines are being sold at less than fair market value and are determined by the U.S. International Trade Commissions ("USITC") to be injuring U.S. industry.  United States Customs and Border Protection ("Customs"), an agency within the Department of Homeland Security, is responsible for collecting antidumping duties and other customs fees.

2.      Relator A-Gas USA, Inc., d/b/a A-Gas Americas ("A-Gas Americas") is a Delaware limited liability company with principal offices in Bowling Green, Ohio, and is

2

the original source of the allegations and information delineated herein, which are based

upon the direct and independent knowledge, investigation, and observation of its personnel.

3.      Relator Kenneth Ponder ("Ponder") is an individual citizen of the United

States, is over eighteen (18) years of age, is not under any legal or other disability, and is the

original source of the allegations and information delineated herein, which he bases upon

his own direct and independent personal knowledge, investigation, and observation.

4.      Defendant LM Supply, Inc. ("LM Supply") is a Florida corporation with a

principal place of business at 13809 20th Street #C, P.O. Box 15762, Tampa, FL 33613, and

is involved in the importation and sale of refrigerants from the People's Republic of China

to the United States.  Defendant LM Supply is affiliated with Defendants Cool Master,

BMP, and IGas, and is under the common control of Defendants BMP and/or Meng.

5.      Defendant Cool Master U.S.A., LLC, a.k.a. Cool Master USA Inc. ("Cool

Master"), is a Florida corporation with a principal place of business at 5814 Mariner Street,

P.O. Box 15762, Tampa, FL 33609, and is involved in the importation and sale of

refrigerants from the People's Republic of China to the United States.  Defendant Cool

Master is affiliated with Defendants LM Supply, BMP and IGas, and is under the common

control of Defendants BMP and/or Meng.

6.      Defendant BMP USA, Inc. ("BMP") is a Florida corporation with a principal

place of business at 5814 Mariner Street, P.O. Box 15762, Tampa, FL 33609, and is

involved in the importation and sale of refrigerants from the People's Republic of China to

the United States.  Defendant BMP is affiliated with Defendants LM Supply, Cool Master

and IGas, and is under the common control of Defendant Meng.

7.     Defendant IGas USA, Inc. ("IGas") is a Florida corporation with a principal place of business at 5814 Mariner Street, P.O. Box 15762, Tampa, FL 33609, and is the successor to Defendant BMP and/or other BMP Defendants, is partially owned by a Chinese chemical manufacturer, and is involved in the importation and sale of refrigerants from the People's Republic of China to the United States.  Defendant IGas is affiliated with Defendants LM Supply, Cool Master and BMP, and is under the common control of Defendants BMP and/or Meng.

8.     Defendant Xianbin "Ben" Meng ("Meng"), on information and belief, is an individual residing in Florida.  Defendant Meng is the controlling owner and executive manager of Defendants BMP, LM Supply, Cool Master and IGas.

9.     Defendant T.T. International Co., Ltd. ("TTI") is a Chinese business entity with a declared address of Zhongshan, Dalian, Liaoning, China, 116001, and is involved in the export and import of refrigerants from the People's Republic of China to the United States.

10.     Defendants LM Supply, Cool Master, BMP, IGas and Meng, all of which are affiliated, are collectively referred to at times as the "BMP Defendants."

11.     Defendant TTI is at times referred to singly, as the context may require, as "Defendant TTI."

## JURISDICTION AND VENUE

12.     This Court has original federal question jurisdiction over the claims asserted herein pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3730(b), and supplemental jurisdiction to entertain common law or equitable claims pursuant to 28 U.S.C. § 1367(a).

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(c) and 31 U.S.C. § 3732(a) because each of the defendants undertook activities, or conspired with regard to

such activities, to defraud the United States and avoid payments which were to be paid to

the U.S. Government in the District of Columbia, and violated federal statutes.  In addition,

on information and belief, each of the defendants imports or sells refrigerants subject to the

allegations herein nationally within the United States including for use in the District of

Columbia.

## FACTS

### Customs Duties and Fees

14.    All merchandise imported into the United States is required to be "entered,"

unless specifically excepted.  19 U.S.C. § 1484; 19 C.F.R. § 141.4(a).  "Entry" means,

among other things, that an importer or its agent (usually a licensed customs broker acting

on behalf of the importer) must file appropriate documents that allow Customs to assess the

customs duties and fees due on the merchandise being imported into the United States.  19

C.F.R. § 141.0a(a).

15.    Importers are required to file an entry summary (CBP Form 7501).  Among

other things, the entry summary contains the date of import, the importer of record, a code

signifying the entry type (including whether the entry contains any items subject to

antidumping duties), and the value of the items.  The entry summary also must contain the

appropriate eight-digit subheading from the Harmonized Tariff Schedule of the United

States ("HTSUS Code") that best describes each item of merchandise.  19 C.F.R. § 142.6.

16.    Importers are required to maintain, and submit upon request, documentation

supporting the statements made on the Entry Summary.  Such documentation includes a

Commercial Invoice, a Packing List, a Country of Origin Certificate, and a Bill of Lading.

*See, e.g.*, 19 C.F.R. §§ 141.11, 141.19(a), 141.81, 141.86(a), 142.3(a), 142.6(a).

17.    The value or approximate value of the imported merchandise must be declared in the commercial invoice and entry summary.  19 C.F.R. § 142.6.

18.    The commercial invoice must also contain an adequate description of the merchandise, including quantity and price. 19 C.F.R. § 141.86.

19.    Pursuant to 19 U.S.C. § 1484, the entity serving as "importer of record" is assigned the responsibility of paying the duty and using reasonable care in making and providing accurate documentation to Customs.  An importer of record is responsible for ensuring that the imported goods comply with the local laws, filing a completed duty entry and associated documents with Customs, and paying the import duties and other fees on those goods.

20.    Federal law provides that every importer must file a declaration stating that the values and all other statements set forth on these documents and the entry itself are true and correct.  19 U.S.C. § 1485.

21.    The entry summary form includes a declaration that "I certify that the above information is accurate, the bond is sufficient, valid and current, and that all requirements of 19 CFR Part 142 have been met."

<u>Antidumping Duties</u>

22.    In addition to regular customs duties, the United States may levy duties on imported goods that are being dumped (*i.e.*, sold in the United States at prices below the producer's cost of production or sales price in the country of origin) or for which foreign manufacturers are receiving unfair subsidies.  19 U.S.C. §§ 1671, 1673.  Antidumping duties are imposed to combat dumping.  The duties are meant to level the playing field for

domestic manufacturers by compensating for unfair advantage gained by foreign manufacturers.

23.     Antidumping duties are levied when the USITC determines that a U.S. domestic industry is being materially injured, and Commerce determines that imports are being dumped in the United States.  Commerce sets an ad valorem duty rate, which is multiplied by the value of the merchandise entering the United States (the "entered value") to determine the amount of antidumping duties owed.  19 C.F.R. § 351.212(b).  For example, if a duty rate is 30 percent, the duty owed on merchandise valued at $100 would be 30 percent of $100, or $30.

24.     When imposing antidumping duties, Commerce issues a duty order that describes the merchandise subject to the additional duties (the "scope of the order") in terms of the type of merchandise and the country of origin of that merchandise.

25.     Commerce may include within the scope of the order merchandise that is not in the literal scope but the importation of which circumvents the order pursuant to § 781 of the Tariff Act, 19 U.S.C. §§ 1677j.

26.     Duties are owed to Customs on importation.  19 C.F.R. § 141.1(a).

27.     The entry summary requires the importer to identify a two-digit code for the entry type. When antidumping or countervailing duties are owed, importers must identify the "03" entry type in the specified block of the entry summary.

28.     Guidance published by Customs in February 2004 poses a series of questions to help importers ensure that they are exercising reasonable care when declaring the amount of duties owed. For example, one of the questions is, "Have you taken measures or developed reliable procedures to check to see if your goods are subject to a Commerce

7

Department dumping or countervailing duty investigation or determination, and if so, have you complied or developed reliable procedures to ensure compliance with Customs reporting requirements upon entry (e.g., 19 C.F.R. § 141.61)?"  Customs, Reasonable Care (A Checklist for Compliance) 12 (2004) ("Reasonable Care Guidance").  The Reasonable Care Guidance also asks whether the importer has established reliable procedures, consulted with an expert, and obtained a ruling from Customs.  *Id.* at 10-11.

29.     In 2015-2016, Commerce and the USITC investigated refrigerant imports and concluded that "HFC blends" imported from the People's Republic of China were being dumped into the U.S. refrigerant market.  The investigation focused on a class of refrigerants known as hydrofluorocarbons ("HFCs"), which class includes a refrigerant known as "R-421A" and other HFC blend refrigerants.[1]  *See Hydrofluorocarbon Blends and Components Thereof from the People's Republic of China: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances*, 81 Fed. Reg. 42,314 (June 29, 2016).

30.     Based on these findings, Commerce issued an antidumping order imposing antidumping on imports of HFC Blends from China.  *Hydrofluorocarbon Blends From the People's Republic of China: Antidumping Duty Order* (A–570–028), 81 Fed. Reg. 55,436 (Aug. 19, 2016) (the "HFC Blends antidumping order").

31.     The HFC Blends antidumping order imposes duties on imports of five specifically named HFC refrigerant blends imported from China, which defendants import,

---

[1] Refrigerants are commonly designated by their "R" number assigned by the American Society of Heating, Refrigerating and Air-Conditioning Engineers ("ASHRAE") and by proprietary brand name used in marketing.

supply, sell and produce.  *Hydrofluorocarbon Blends From the People's Republic of China:*
*Antidumping Duty Order* (A–570–028), 81 Fed. Reg. 55,436 (Aug. 19, 2016) ("The
products subject to this order are HFC blends.  HFC blends covered by the scope are R–
404A…R–407A...R–407C...R–410A...R–507A...R–507.").

32.     The HFC Blends antidumping order expressly <u>excludes</u> HFC blends that are
patented.  This exclusion specifically applies to the patented HFC blend Choice® R-421A.
*Hydrofluorocarbon Blends From the People's Republic of China: Antidumping Duty Order*
(A–570–028), 81 Fed. Reg. 55,436 (Aug. 19, 2016) ("Also excluded from this order are
patented HFC blends, including, but not limited to, ISCEON® blends, including MO99TM
(R–438A), MO79 (R–422A), MO59 (R–417A), MO49PlusTM (R–437A) and MO29TM
(R–422D), Genetron® PerformaxTM LT (R–407F), Choice® R–421A, and Choice® R–
421B.").

33.     The HFC Blends antidumping order also imposes duties on imports of
unpatented Chinese versions of excluded patented HFC Blends, such as R-421A, when the
imports are used as feedstocks to blend the five specifically named refrigerant blends
covered by the HFC Blends antidumping order, because these imports have been determined
to circumvent the literal scope of the order.  *Hydrofluorocarbon Blends From the People's*
*Republic of China: Final Scope Ruling on Unpatented R–421A; Affirmative Final*
*Determination of Circumvention of the Antidumping Duty Order for Unpatented R–421A*
(A–570–028), 85 Fed. Reg. 34,416 (June 4, 2020); *Final Decision Memorandum for Scope*
*Ruling and Anti-Circumvention Inquiry of the Antidumping Duty Order on*
*Hydrofluorocarbon Blends from the People's Republic of China; Unpatented R-421A*, dated
May 28, 2020.

34.     R-134a is a hydrofluorocarbon chemical that is used as a refrigerant and as a blending component to make HFC blends such as those subject to the HFC Blends antidumping order.

35.     Choice® R-421A contains 42% of the blending component R-134a.

36.     Imports of R-134a from China are subject to a separate antidumping duty, whether used as a stand-alone product or a blending component.  *1,1,1,2 Tetrafluoroethane (R–134a) from the People's Republic of China: Antidumping Duty Order* (A-570-044), 82 Fed. Reg. 18,422 (Apr. 19, 2017) (the "R-134a antidumping order").

37.     The antidumping duties imposed on HFC refrigerants are significant.  The HFC Blends antidumping order requires a 285.73% duty on shipments of HFC blends from China of the type imported by defendants.  Imports of R-134a from China subject to the R-134a antidumping order are subject to a duty of 167.02%, had defendants declared the shipments as R-134a.

<u>Merchandise Processing Fees</u>

38.     Formal and informal entries are subject to a Merchandise Processing Fee at the time of entry.  19 C.F.R. § 24.23(b)(1).  The fee is set at 0.3464% of the value of the merchandise being imported, as determined under 19 U.S.C. § 1401a and 19 C.F.R. § 152.103.  The maximum fee charged per entry is $485 and the minimum is $25.  19 C.F.R. § 24.23(b)(1)(i)(B).  The fee is listed on the Entry Summary, CBP Form 7501.

<u>Harbor Maintenance Fee</u>

39.     The Harbor Maintenance Fee is intended to require those who benefit from maintenance of U.S. ports and harbors to share the cost of the maintenance.  The fee is

10

assessed as 0.125% of the value of the commercial cargo.  19 C.F.R. § 24.24; 19 C.F.R. § 152.103.  The fee is listed on the Entry Summary, CBP Form 7501.

<u>Environmental Regulations</u>

40.    EPA's Significant New Alternatives Policy ("SNAP") program established under Section 612 of the federal Clean Air Act prohibits the sale or use of any unapproved HFC substitute.

41.    Choice® R-421A is approved under the SNAP for use in the United States. However, non-patented versions of R-421A are not approved under the SNAP program and may not be introduced into commerce in the U.S. without separate authorization.

42.    Importers of HFCs are also required to report their imports to the U.S. EPA if, at the corporate level, their imports contained a total of 25,000 metric tons of carbon dioxide equivalent (metric tons CO2e) or more of fluorinated GHGs based on the material's global warming potential under 40 C.F.R. Subpart OO.

<u>R-421A Refrigerant</u>

43.    Choice® R-421A is a patented hydrofluorocarbon chemical which is subject to exclusive patent rights held by Relator Kenneth Ponder (the "Ponder Patents"), and is marketed in the United States under the trade name "Choice® R-421A" by RMS of Georgia, LLC, d/b/a Choice Refrigerants, of Alpharetta, Georgia ("Choice Refrigerants"), a company controlled by Mr. Ponder.  Information regarding Choice® R-421A is available at http://rmsgas.com/r-421a-info/.   It is widely known in the refrigerants industry that Choice® R-421A is a proprietary, patented product to which Mr. Ponder and Choice Refrigerants have exclusive rights.

44.     R-421A is an HFC blend, consisting of the HFC blending components R-125 (58%) and R-134a (42%).

45.     There is no authorized, licensed, or approved version of R-421A legally able to be imported or sold in the United States other than Choice® R-421A.

46.     R-421A is valuable as a refrigerant used in residential and commercial air conditioning and refrigeration equipment as an environmentally friendly substitute for the older ozone-depleting refrigerant R-22.  Use of R-22 in the United States has been phased out by the U.S. Environmental Protection Agency ("EPA") pursuant to the Montreal Protocol on Substances that Deplete the Ozone Layer and domestic legislation under the federal Clean Air Act, 42 U.S.C. §§ 7671-7671q, and the Stratospheric Ozone Protection regulations promulgated by the EPA in Title 40, Code of Federal Regulations, Part 82, due to the environmentally damaging effect of older refrigerants on the global ozone layer.

47.     Refrigerant imports are typically shipped as compressed gas in large pressurized steel tanks ("ISOs") or smaller steel cylinders.  Unless physical analytical testing of the contents of these containers is undertaken by Customs, which is infrequent and burdensome, the contents of the container can only be determined from the packaging or label on the container, or from information declared by the shipper and importer on shipping documents and customs entry forms.

48.     Because of the imposition of economically significant antidumping duties on HFC refrigerants, and because of the difficulty posed to Customs to assess the actual chemical contents of refrigerant containers, importers have a strong incentive and motive to disguise, mis-label, mis-declare, re-package and/or re-blend imports of non-excluded HFC blends or HFC blending components to avoid antidumping duties.

Defendants' Shipments

49.     Between December 2016 and at least December 2017, defendants imported at least 21 shipments containing some 779,195 kilograms (1,717,401 pounds) of chemicals identified by defendants in customs documentation as "R421A" for which defendants indicated no antidumping duty was owed.  The shipments imported by defendants that are known and identifiable at this time are reflected in Ex. 1.

50.     These shipments originated from China and were imported through various U.S. ports including Tampa, Florida; Los Angeles, California; and Long Beach, California.

51.     Defendants at times (including shipments on June 17, 2017, June 10, 2017, April 8, 2017, March 25, 2017, and March 18, 2017) declared shipments as originating in Jamaica which actually originated in China.

52.     Defendants declared the value of the shipments based on an average price per pound that was approximately 17% lower than the actual fair market value price per pound if the shipments had actually been R-421A and valued as such, and were significantly lower than if the shipments had been valued as separate blending components including R-134a subject to the R-134a antidumping duty.

53.     Defendant TTI supplied and arranged for the export of the shipments from China to BMP Defendants with knowledge of the scheme to avoid antidumping duties.

54.     At all times, defendants imported the shipments with knowledge of the Ponder Patents and Mr. Ponder's proprietary rights in R-421A, were aware of the HFC Blends antidumping order, were aware of the R-134A antidumping order, were aware of the exclusion of patented HFC blends from the HFC Blends antidumping order, were aware of

the statutory prohibition on circumventing antidumping orders, and were aware of the significance of declaring shipments of R-421A with respect to antidumping duties.

55.     In actuality, although defendants declared the shipments as R-421A, defendants lacked any patent or license rights in the R-421A shipments, had no right to declare the shipments as R-421A, and had not obtained authorization to import R-421A into the United States or introduce R-421A into commerce.

56.     The shipments did not qualify for the exclusion to the HFC Blends antidumping order available to the actual patent holder of a patented HFC blend.

57.     Defendants intended to take advantage of the presence of R-134a and R-125 in the shipments by using the shipments as unfinished versions of HFC blends subject to the HFC Blends antidumping order and/or as blending components subject to the R-134a antidumping order.

58.     Although defendants declared the shipments as R-421A, defendants had no intention of using, selling, or treating the shipments as R-421A for any commercial purpose beyond transferring the material to affiliated companies to effectuate the fraudulent evasion of antidumping duties.

59.     Defendants did not actually sell or use the shipments as R-421A.

60.     The shipments were not in fact R-421A.

61.     Instead, the shipments were versions of HFC blends subject to the HFC Blends antidumping order.

62.     Specifically, the shipments were unfinished or out-of-specification versions of one or more of the refrigerant blends R–404, R–407A, R–407C, R–410A and/or R–507/A, all of which are subject to the HFC Blends antidumping order and associated duties.

63.     Defendants used each of the shipments to sell as one or more of the refrigerant blends R–404, R–407A, R–407C, R–410A and/or R–507/A, all of which are subject to the HFC Blends antidumping order and associated duties.

64.     Defendants intended, by declaring the shipments as "R-421A" to disguise the true nature of the shipments by describing the shipments as a patented HFC blend rather than unfinished versions of HFC blends subject to the HFC Blends antidumping order, and thereby to avoid antidumping duties.

65.     The description of the shipments as "R-421A" was entirely fabricated for no legitimate commercial purpose but to disguise the true nature of the shipments as unfinished HFC blends.

66.     The description of the shipments as "R-421A" was also intended to obfuscate, avoid, or delay a determination of circumvention by the government.

67.     Defendants' use of R-421A as an unfinished or out-of-specification version of HFC Blends covered by the HFC Blends antidumping order, or for its constituent blending components to blend HFC blends covered by the HFC Blends antidumping order, is the exact conduct determined by the government to circumvent the HFC Blends antidumping order; thus the shipments were covered by the HFC Blends antidumping order and subject to collection of antidumping duties.

68.     As part of their fraudulent scheme, defendants also sought to take advantage of the blending components R-134a and R-125 contained in the shipments declared as R-421A.

69.     In this way, defendants also sought to evade the R-134a antidumping order.

15

70.     Defendants declared the shipments as R-421A rather than as blending components because they anticipated that, if they had disclosed the true nature and intended use of the shipments, Customs would re-characterize the shipments as partial shipments of R-134a and assess the R-134a antidumping duty on that portion of the shipment.

71.     Defendants knew, or should have known, that if they imported the shipments in their true form, or disclosed their true intentions, the shipments would be subject to significant antidumping duties (up to 285% and at least 167%).

72.     Defendants had no reasonable basis to believe that Commerce and Customs would determine that the shipments were not subject to either the HFC Blends antidumping duty and/or the R-134a antidumping duty if the true nature and use of the shipments had been disclosed.

73.     At no time did defendants seek clarification from the government regarding their shipments or intended use, despite the Reasonable Care Guidance, as they anticipated that Customs and/or Commerce would determine that the shipments were subject to the HFC Blends antidumping order and/or R-134a antidumping order.

74.     Defendants knew that they could have sought a scope ruling from Commerce with regard to applicability of antidumping duties to the shipments, but intentionally chose not to disclose their scheme to the government or to seek a ruling with regard to the legality of their scheme.

75.     As exporter and importers of record for such shipments, defendants prepared shipping papers reflecting the declaration of "R-421A" when they knew or should have known that the goods were not R-421A and were not intended for use or sale as R-421A,

but rather the shipments were, and were intended to be used as, covered HFC blends and/or R-134a.

76.     Upon importation of each shipment, defendants' customs brokers, acting as defendants' agents, submitted to Customs an entry summary (CBP Form 7501).

77.     On information and belief, for all entries of R-421A, defendants falsely declared, conspired to declare, or caused to be declared, the code "01" or no code on the summary entry form.  By entering "01" rather than "03," defendants falsely declared, conspired to declare, or caused to be declared that the entry was not subject to antidumping duties.

78.     For all entries of R-421A, defendants falsely represented, conspired to represent or caused to be represented, the nature of the imports, in that the imports were falsely described in import documentation provided to Customs, and/or were misclassified by using a false HTSUS code.

79.     For each of the entries of R-421A, the amount of duties defendants declared or caused to be declared or conspired to have declared as owed on the import is false.  The actual amount of duties owed is much higher since defendants undervalued the merchandise and did not include applicable antidumping duties.

80.     For each of the entries of R-421A, the amount of fees defendants declared or caused to be declared or conspired to have declared as owed on the entry is false.  The actual amount of fees owed is much higher since defendants undervalued the merchandise.

81.     Through their documentation, defendants intended by their fraudulent scheme to mislead Customs into believing that the shipments were in fact patented Choice® R-421A, which is expressly exempt from the HFC Blends antidumping order, and would

therefore avoid "red flags" when Customs saw that no antidumping duty had been indicated on the customs documents.

82.     Through their documentation, defendants also intended to mislead Customs into believing that the shipments were the HFC blend R-421A and not merely the HFC blending component R-134a, which is subject to the R-134a antidumping order, shipped in the same ISO tank with other components.

83.     Subsequent to clearing customs, defendants conspired to re-label, re-package, re-blend or otherwise disguise the true nature of the refrigerant imported as R-421A all in support of a scheme to conceal, disguise and cover up the illegal avoidance of antidumping duties under the antidumping orders.

84.     Defendants knowingly, or with deliberate ignorance or reckless disregard, used false entry summaries and invoices with the intention and expectation that the government would reasonably rely on the false codes, misrepresentations and misstated values stated on the entry documents.

85.     Defendants' false entry summaries and invoices were material to the government's assessment and collection of antidumping duties and fees.

86.     Defendants, as sophisticated and experienced participants in the refrigerant import market, knew that Customs would rely on the shipping documents and customs forms as to the nature of the shipments and would collect (or fail to collect) duties based on defendants' false statements and fraudulent concealment of the true nature of the shipments.

87.     Defendants' false entry summaries and invoices caused defendants to pay less than the amount of antidumping duties and fees owed to Customs.

88.     Defendants should have paid an antidumping duty under the HFC Blends antidumping order on the shipments of at least $11,086,598.

89.     Similarly, the BMP Defendants should have paid an antidumping duty under the R-134a antidumping order on the shipments of at least $2,721,825.

90.     Defendants gained a material advantage in the U.S. refrigerants market by importing R-421A without paying duties.

### Scheme to Avoid Merchandise Processing and Harbor Maintenance Fees

91.     Defendants also engaged in a scheme to understate the value of their imported goods to avoid the full payment of the Merchandise Processing Fee and Harbor Maintenance Fee.

92.     These false valuations were presented to Customs, resulting in lower fees assessed.

93.     In total, defendants underpaid antidumping duties and customs duties and fees by millions of dollars.

### Scheme to Avoid Liability

94.      In response to an administrative complaint filed by relators in August 2017, Customs intercepted one of defendants' shipments and determined that the contents consisted of the blending components R-134a and R-125.

95.     After learning of the government's investigation, the BMP Defendants changed the shell company used as the importer of record for the shipments, formed new shell companies, and transferred its shipping business and assets of the companies involved in the fraudulent imports to the new companies in an effort to perpetuate their scheme, conceal their activities, avoid liability, and shelter assets.

19

96.     Defendants thus intended to, and took affirmative steps to, fraudulently transfer assets to further their fraudulent conduct and avoid liability or financial responsibility.

97.     Defendant IGas is the successor to the import and blending business of the other BMP Defendants and is therefore liable for any damages assessed to such other defendants.

98.     Due to the coordinated effort of the defendants, defendants are jointly and severally liable for each other defendant's liability.

<u>Administrative Penalties</u>

99.     When entering goods into the United States, customs laws require an importer to submit certain documentation, including true and accurate descriptions of the content of the shipment.

100.     Defendants, through the fraudulent imports described herein, violated the customs laws of the United States, including without limitation: 19 U.S.C. § 1484, which *inter alia* requires importers to make entry and exercise reasonable care in doing so; 19 U.S.C. § 1481 and 19 C.F.R. § 141.86, which *inter alia* require accurate descriptions on customs records; 19 U.S.C. § 1304, which *inter alia* requires proper marking of imported goods with country of origin; 19 U.S.C. § 1592, which prohibits false statements, acts or omissions; and 19 U.S.C. §§ 1508 and 1509, which *inter alia* require proper records.

101.     In addition to penalties and damages under the False Claims Act, defendants should be assessed civil penalties or fines under 19 U.S.C. § 1592 in the amount of the domestic value of the merchandise or four times the loss of revenue to the United States.

102.    In addition, defendants should be assessed additional duties under 19 U.S.C. § 1304 in the amount of 10 percent of the value of all goods entered without proper country of origin marking.

103.    In addition, defendants should be assessed penalties or fines under 19 U.S.C. § 1509 in the amount of the lesser of $100,000 or 75% of the value of goods entered for each instance of fraudulently submitted records.

<u>Environmental Violations</u>

104.    Defendants imported their shipments into the United States and introduced their shipments into interstate commerce in the United States.

105.    Defendants did not obtain authorization for their shipments under, and their shipments of R-421A were not authorized under, the SNAP program administered by the U.S. EPA.

106.    On information and believe, defendants failed to report, or did not accurately report the true nature of, their shipments to the U.S. EPA as HFC imports under the Clean Air Act greenhouse gas reporting program as applicable to HFC chemical imports.

**FIRST CAUSE OF ACTION**

**(FALSE CLAIMS ACT 31 U.S.C. § 3729 – CIRCUMVENTION OF HFC BLENDS ANTIDUMPING ORDER)**

107.    The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

108.    In violation of 31 U.S.C. § 3729(a)(1)(G), defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the government.

109.    At all material times, defendants either had actual knowledge of the falsity, acted in deliberate ignorance of the truth or falsity, or acted in reckless disregard of the truth or falsity, of their records and statements regarding the merchandise imported into the United States.

110.    By means of these false statements, defendants avoided or decreased the amount of customs duties they paid on imports of merchandise and fees paid on all merchandise imported in an amount to be determined at trial.

111.    By this fraudulent conduct, defendants violated customs laws as set forth herein.

## SECOND CAUSE OF ACTION

## (FALSE CLAIMS ACT 31 U.S.C. § 3729 – EVASION OF R-134a ANTIDUMPING ORDER)

112.    The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

113.    In violation of 31 U.S.C. § 3729(a)(1)(G), defendants knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the government.

114.    At all material times, defendants either had actual knowledge of the falsity, acted in deliberate ignorance of the truth or falsity, or acted in reckless disregard of the truth or falsity, of their records and statements regarding the merchandise imported into the United States.

115.    By means of these false statements, defendants avoided or decreased the amount of customs duties they paid on imports of merchandise and fees paid on all merchandise imported in an amount to be determined at trial.

116.    By this fraudulent conduct, defendants violated customs laws as set forth herein.

### THIRD CAUSE OF ACTION

### (FALSE CLAIMS ACT 31 U.S.C. § 3729 – CONSPIRACY)

117.    The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

118.    In violation of 31 U.S.C. § 3729(a)(1)(C), defendants conspired to commit a violation of subparagraph (G) of 31 U.S.C. § 3729(a)(1).

119.    At all material times, defendants either had actual knowledge of the falsity, acted in deliberate ignorance of the truth or falsity, or acted in reckless disregard of the truth or falsity, of their records and statements regarding the merchandise imported into the United States.

120.    Thus, defendants conspired to knowingly make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the government.

121.    As a result of this conspiracy, the United States was damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### (UNJUST ENRICHMENT)

122.    The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

123.    By reason of the false statements submitted to the government regarding the duties owed on imports of subject merchandise and fees owed on all imports, defendants avoided paying duties and fees owed to the United States, and were thereby unjustly enriched in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### (ENVIRONMENTAL VIOLATIONS)

124.    The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

125.    Defendants violated the Clean Air Act by introducing the shipments into commerce in the United States without obtaining authorization under the SNAP program.

126.    Defendants violated the Clean Air Act by failing to report accurately the true nature of their HFC imports as greenhouse gases.

## PRAYER FOR RELIEF

WHEREFORE, Relators, on behalf of the United States of America, pray for the following:

A.    A preliminary and permanent injunction enjoining further unlawful imports of R-421A refrigerant by defendants into the United States;

B.    An award of treble damages, civil penalties, expenses, fees, and costs against defendants, jointly and severally, in accordance with 31 U.S.C. § 3729 *et seq.* for defendants' violations, and continuing violations, of 31 U.S.C. § 3729(a)(l)(G);

24

C.  An award of treble damages, civil penalties, expenses, fees, and costs against defendants, jointly and severally, in accordance with 31 U.S.C. § 3729 *et seq.* for defendants' conspiracy and violations, and continuing conspiracy and violations, of 31 U.S.C. § 3729(a)(l)(C);

D.  An award of a trial by jury on all issues so triable; and

E.  An award of such other and further relief, legal or equitable, which the Court deems just and proper.

## JURY TRIAL DEMAND

Relators, on behalf of the United States, demand a trial by jury on all issues so triable.

Dated:  July 9, 2020                    Respectfully submitted,

David M. Williamson
(D.C. Bar No. 462762)
WILLIAMSON LAW + POLICY, PLLC
1850 M Street NW, Suite 840
Washington, D.C. 20036
(202) 256-6155
maxwilliamson@williamsonlawpolicy.com
*Counsel for Relators*

## CERTIFICATE OF SERVICE

I hereby certify that this Amended Complaint has been filed under seal and served via

certified mail, return receipt requested, sufficient postage prepaid, addressed as follows:

Hon. William Barr
U.S. Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Michael R. Sherwin
Acting U.S. Attorney for the District of Columbia
Attn:  John Truong, Esq.
c/o Civil Process Clerk
United States Attorney's Office
555 4th Street, NW
Washington, DC 20530

Dated:   July 9, 2020

_____

David M. Williamson